IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **RAIL SCALE, INC.** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. 2:15-cv-2117 |
| | § | |
| **BALANCED RAILSCALE** | § | |
| **CERTIFICATION, LLC, TROY** | § | |
| **SWEDLUND, and DENNIS SANDIFER** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff Rail Scale, Inc. ("Plaintiff" or "RSI") hereby files this Original Complaint and Application for Preliminary and Permanent Injunction against Defendants Balanced Railscale Certification, LLC ("BRC"), Troy Swedlund ("Swedlund"), and Dennis Sandifer ("Sandifer") (collectively, "Defendants"), and respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

RSI specializes in calibrating and certifying railroad scales using industry leading and proprietary test equipment. The technology and information necessary to certify railroad scales is highly specialized and relies on unique processes that have been perfected by RSI for over 16 years, resulting in RSI gaining an excellent reputation in the industry. Since 1999, RSI has perfected a railroad scale test process free of rail-bound test cars that allows it to serve customers throughout the 48 contiguous states.

Defendants Swedlund and Sandifer were trusted members of the RSI team and had access to RSI's confidential, proprietary trade secret information.   Swedlund and Sandifer recently started their own railroad scale certification business and are unfairly competing with RSI through the use of the confidential and proprietary trade secret information they misappropriated from RSI.  Defendants are wrongfully in possession of RSI's confidential and proprietary trade secret information, and are using such information to, among other things, solicit RSI's customers to unfairly compete with RSI.  Moreover, Swedlund and Sandifer—through their new business enterprise BRC—are infringing RSI's protected "Rail Scale" and "railscale" trademark and trade name to compete against RSI, going so far as to even use RSI's protected mark in the BRC corporate name.

Accordingly, Plaintiff respectfully requests a Preliminary Injunction enjoining Defendants from using any of RSI's confidential and proprietary trade secret information in any manner, including the use of such information to compete with RSI in contacting RSI customers and/or performing any railroad scale certifications. Upon trial of this cause, Plaintiff requests monetary damages and a permanent injunction enjoining the same.

## II.
## PARTIES

**Plaintiff**

1.      Plaintiff RSI is a Florida corporation and a citizen of Florida, with its principal place of business located at 111 Nature Walk Parkway Suite 105, St. Augustine, FL 32092.

**Defendants**

2.      Defendant Balanced Railscale Certification, LLC is a Texas Limited Liability Company, a Texas citizen, with its principal place of business at 2681 County Road 3250,

Quitman, TX 75783-5259.  BRC may be served through its registered agent Dennis P Sandifer at 2681 County Road 3250, Quitman, TX 75783-5259, or wherever he may be found.

3.      Defendant Dennis P. Sandifer is an individual who is a Texas citizen and resides at 2681 County Road 3250, Quitman, Wood County, Texas 75783-5259.  Sandifer is also one of two managing members of Defendant BRC, a Texas formed business entity, and can be served with process at 2681 County Road 3250, Quitman, Wood County, Texas 75783-5259 or wherever he may be found.

4.      Defendant Troy Swedlund is an individual who, based on information and belief, is a Texas citizen and resides at 2681 County Road 3250, Quitman, Wood County, Texas 75783-5259.  Swedlund is also one of two managing members of Defendant BRC, a Texas formed business entity,  and can be served with process at 2681 County Road 3250, Quitman, Wood County, Texas 75783-5259 or wherever he may be found.

## III.
## JURISDICTION AND VENUE

5.      Plaintiff's Lanham Act claims for trademark and trade name infringement arise under federal law, specifically, 15 U.S.C. §§ 1114 and 1125, and this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court further has pendant jurisdiction over the state law claims asserted herein because those claims arise in the same common nucleus of operative facts as the federal Lanham Act claims.

6.      Pursuant to 28 U.S.C. § 1332, the Court also has diversity jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is between a citizens of the State of Texas on the one hand, and a citizen of a foreign state (Florida) on the other.

7.     Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Eastern District of Texas, Marshall Division, because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Eastern District of Texas, and the Court has personal jurisdiction over Defendants.

8.     Defendants may be served in accordance with Rules 4(e) and (h) of the Federal Rules of Civil Procedure and Rule 106 of the Texas Rules of Civil Procedure at the above listed addresses.

## IV.
## BACKGROUND FACTS

### A.  Development of Rail Scale, Inc. and its railroad scale certification processes.

9.     Prior to 1999, all railroad scales were certified with rail-bound test cars and were mostly certified by the railroads themselves.

10.     RSI, in cooperation with CSX Transportation[1], developed the concept of semi-truck testing using specialized weight carts, which allowed railroad scale certification to become non-railbound. After RSI developed this revolutionary way of certifying railroad cars, railroads slowly stopped performing certifications themselves and customers began hiring RSI to conduct the tests.

11.     RSI, in turn, was able to offer extremely competitive pricing, establish reliable testing schedules, and provide a flexibility not previously available in the industry.

12.     Over time, the railroads provided RSI with customer contacts and introductions to clients they previously served. Eventually, RSI acquired the railroads' equipment and customer lists through purchases, or otherwise through its growth and greater market share in the industry.

---

[1] CSX Transportation is a railroad company that previously certified railway scales. RSI purchased aspects of CSX Transportation's business operations and acquired many of its assets, including customer lists and scale certification equipment. One of the most important acquisitions was the customer lists.

13.     Also with experience and time, RSI identified improvements to the process of railroad scale certification.

14.     For example, RSI—using specialized engineers—modified its original test cart and incorporated various improvements at a substantial cost. Such improved technology improved the railroad scale certification process and, as such, is valuable proprietary and trade secret property belonging to RSI.

15.     In short, RSI has invested substantial time, money, and resources developing confidential and proprietary trade secret information giving it a distinct advantage in its industry including, without limitation: (1) non-railbound testing procedures, methods, and equipment; (2) pricing based on the non-railbound testing methods; (3) confidential customer lists; (4) customers' maintenance schedules based on RSI's past dealings; (5) specially engineered weight carts used in railroad scale testing; and (6) the manner of securing the weight carts to tractor trailers, including distribution of the weight to comply with the federal bridge weight law (these confidential and proprietary trade secrets will hereinafter be referred to collectively as "Confidential Trade Secrets").

16.     Whether through its relationships and/or through acquisitions, RSI invested substantial time, cost, and resources to develop its Confidential Trade Secrets.  RSI's Confidential Trade Secrets are not public information, were reasonably protected by RSI by keeping them limited to management-level employees, and could not be obtained but for having inside knowledge gained at RSI. RSI's Confidential Trade Secrets provide it with a unique competitive advantage.

**B. Swedlund worked for RSI and had access to RSI's Confidential Trade Secrets.**

17.     On March 13, 2000, RSI hired Swedlund as a scale inspector. As part of his employment, he signed an employee handbook, agreeing to comply with all RSI rules, policies, and procedures. The employee handbook expressly provides that employees are prohibited from stealing company property.

18.     Also as part of his employment, RSI paid for Swedlund to attend and complete the Stabler Training Series where he received a certificate for successfully completing continuing education credits related to railroad scale certification.

19.     Swedlund was then promoted to Director of Scale Certification Services.  As Director of Scale Certification Services, Swedlund was given confidential and proprietary information related to RSI's training, customer lists, certification reports, and methods of operation.

20.     Swedlund's position at RSI also gave him specialized access to RSI's Confidential Trade Secrets, including the engineering project for improving the weight carts used in the certification process; therefore, he had access to the engineering drawings and RSI's trade secrets related to its non-railbound method for railroad scale certification.

21.     Swedlund's job duties included training RSI's certification technicians, ensuring that certification teams were compliant with state-mandated Weights and Measures Departments, and ensuring that all testing and safety equipment met RSI requirements.

**C.  Sandifer worked for RSI and had access to RSI's Confidential Trade Secrets.**

22.     On February 9, 2004, RSI hired Sandifer as a scale certification technician. Sandifer was later promoted to Manager of Scale Certification Services.

23.     As part of his employment with RSI, Sandifer also signed the employee handbook, agreeing to comply with all RSI rules, policies, and procedures, including that he would not steal company property.

24.     Sandifer worked under the direction of Swedlund, and also had specialized access to RSI's Confidential Trade Secrets.

25.     Sandifer, among other things, undertook responsibility for managing RSI's relationships with customers, managing its railroad scale certification operations, and coordinating testing opportunities for RSI.

**D. Defendants leave RSI with RSI's Confidential Trade Secrets and start BRC to unfairly compete with RSI.**

26.     In October 2011, Sandifer resigned from his position at RSI.

27.     In January 2015, RSI terminated Swedlund for safety violations and dangerous activity that led to costly damage to RSI equipment, and an injury to Swedlund himself.

28.     Upon information and belief, Swedlund anticipated his termination and prepared for it by stealing RSI's Confidential Trade Secrets.

29.     RSI's Confidential Trade Secrets are critical to its business model. RSI spent considerable time, money, and resources developing the Confidential Trade Secrets, which Defendants are using to unfairly compete against RSI by, among other things, copying RSI's confidential and proprietary engineering specifications for weight carts used in the certification process.

30.     Within a month of his termination, on February 25, 2015, Swedlund and Sandifer founded BRC in Texas, and began using the confusingly similar and deceptive trade name "Railscale" in interstate commerce.

31.     In or around November 2015, Defendants launched a website for BRC where they advertise services directly competing with RSI by utilizing RSI's Confidential Trade Secrets.

32.     Most recently, in December 2015, Defendants used RSI's Confidential Trade Secrets to solicit business from an RSI customer.   Based on their prior access to RSI's Confidential Trade Secrets as trusted employees of RSI, Defendants knew the confidential servicing schedules and pricing RSI provides its customers.   Armed with such knowledge, Swedlund—on behalf of BRC—solicited an RSI customer in person, knowing that it was near the time for RSI to provide its scheduled services to the customer.   Swedlund provided the RSI customer with his BRC business card with a notation that he previously "Worked for Rail Scale." Moreover, Swedlund informed the RSI customer that he knew RSI's pricing for that customer, and would conduct the same services for less than RSI's pricing.

33.     Additionally, Defendants' website confirms that they are using RSI's misappropriated Confidential Trade Secrets in connection with the services they are marketing prospective customers.   In particular, BRC advertises that it engages in "railroad track scale testing and certification" as follows:

> BRC will test your railroad track scale using 80,000lb combined certified weights and test car. We are completely mobile utilizing two tractor trailers to transport the weight, test cart plus use a knuckle boom crane to unload the cart and weights for testing.

34.     This is precisely the same manner and method of testing and certification developed by RSI, and considered as part of RSI's Confidential Trade Secrets. In fact, the narrative on BRC's website appears to be a close copy of RSI's website.

35.     Moreover, pictures on BRC's website and Facebook page highlight the extent of Defendants' theft of RSI's property. The testing carts, distribution of weights and scales, and methodology marketed and utilized by Defendants can all be traced back to RSI.

36.     Upon information and belief, the weight carts pictured on Defendants' website and Facebook pages are a direct copy of the carts used by RSI, which were designed and created using RSI's confidential and proprietary engineering plans. Defendants' equipment, especially the weight cart, is nearly identical and confusingly similar to RSI's equipment and carts.

37.     RSI's manner of securing, distributing, and hauling the testing weight carts is also being copied by Defendants. By way of example, and not limitation, the method of securing, mounting, and distributing the 80,000 pounds of scale weights was developed by RSI over years of trial and error to successfully comply with the Bridge Weight Law and still be cost effective.

38.     Swedlund and Sandifer obtained intimate knowledge of RSI's Confidential Trade Secrets while working at RSI. If Defendants are permitted to continue using RSI's Confidential Trade Secrets to compete with RSI, RSI will continue suffering irreparable harm.

**E.  Defendants' are infringing RSI's trademarks and trade name.**

39.     RSI has certain statutory and common law rights to the "Rail Scale" and "railscale" marks, and has a pending application for federal registration of its name, "Rail Scale". Despite the foregoing, BRC uses the term "railscale" on its website and in its corporate name (Balanced Railscale Certification, LLC).

40.     The use of "railscale" in BRC's company name is likely to cause confusion to the public with respect to the source of the services it provides and/or cause confusion to the public as to whether BRC's services are somehow associated, affiliated, connected, approved, authorized or sponsored by RSI, when in fact they are not.

**F.  Defendants' actions and unfair competition have caused RSI irreparable harm, and unless Defendants are enjoined, their actions will continue to cause irreparable harm.**

41.     As a result of Swedlund and Sandifer's deliberate breaches of their obligations and fiduciary duties to RSI, and the conspiracy to misappropriate and steal RSI's confidential and proprietary information, RSI has been harmed and will continue to be irreparably harmed.

42.     By this action, Plaintiff seeks money damages as compensation for their resulting losses and injunctive relief aimed at preventing Defendants from inflicting further irreparable harm—including loss of customers, diminished market share, loss of business goodwill, and lost business opportunities—to RSI and its business through unfair competition.

**V.**
**CAUSES OF ACTION**

**Count One – BREACH OF CONTRACT**
**(Swedlund and Sandifer)**

43.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Pursuant to the terms of the employee handbook, Swedlund and Sandifer agreed to maintain the confidentiality of RSI's Confidential Trade Secrets.

45.     By virtue of their positions of employment with RSI, Swedlund and Sandifer are in possession of RSI's Confidential Trade Secrets.

46.     Plaintiff never authorized Swedlund or Sandifer to reveal such Confidential Trade Secrets to BRC or any of its employees and investors, and/or to use such information for the purpose of competing with RSI.

47.     By providing BRC with RSI's Confidential Trade Secrets and/or in using such informaiton for unauthorized purposes such as competing with RSI, Swedlund and Sandifer breached their express obligations under the employee handbook to preserve and protect RSI's confidential and proprietary information.

48.     Plaintiff performed all of its obligations under the employee handbook, and any other duties owed to Swedlund or Sandifer pursuant to their employment positions with Plaintiff.

49.     As a result of Swedlund and Sandifer's material breaches of their obligations and duties to RSI, Plaintiff has sustained damages in an amount to be determined by the trier of fact, for which Swedlund and Sandifer are jointly and severally liable.

**Count Two – BREACH OF FIDUCIARY DUTIES**
**(Swedlund and Sandifer)**

50.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

51.     As Director of Scale Certification Services, Swedlund owed RSI fiduciary duties, including duties of loyalty, due care, good faith, candor, and full disclosure.

52.     As Manager of Scale Certification Services, Sandifer owed RSI fiduciary duties, including duties of loyalty, due care, good faith, candor, and full disclosure.

53.     Swedlund and Sandifer breached their fiduciary duties to Plaintiff by, among other things: (i) misappropriating and/or stealing RSI's Confidential Trade Secrets for their own benefit and those of their company, BRC; (ii) intentionally diverting RSI's business opportunities for their own benefit; and (iii) acting in competition with RSI by utilizing RSI's Confidential Trade Secrets to start a competing business in BRC.

54.     As a direct and proximate result of Swedlund and Sandifer's breaches of fiduciary duties, Plaintiff has suffered, and continues to suffer, substantial injury, including a loss of profits from the business opportunities diverted by Swedlund and Sandifer, lost goodwill and business reputation related to BRC's use of the name "Railscale," and actual, compensatory, and consequential monetary damages in an amount to be determined by the trier of fact, for which Swedlund and Sandifer are jointly and severally liable.

55.     Because Swedlund and Sandifer breached their fiduciary duties intentionally, willfully, wantonly, maliciously, and without justification or excuse, Plaintiff is also entitled to recover punitive damages from Swedlund and Sandifer, jointly and severally, in an amount to be determined by the trier of fact.

**Count Three – CIVIL THEFT**
**(All Defendants)**

56.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

57.     Swedlund and Sandifer acquired RSI's Confidential Trade Secrets by virtue of their employment relationship with RSI.

58.     As part of their employment with RSI, Swedlund and Sandifer were provided with RSI's Confidential Trade Secrets, and they had a duty not to disclose such trade secrets to third parties, absent RSI's express permission. BRC, through Swedlund and Sandifer, knew that it was prohibited from misappropriating RSI's Confidential Trade Secrets.

59.     Defendants violated confidential, contractual, and fiduciary relationships with Plaintiff, and through other unfair means, have intentionally and wrongfully used, disclosed, and/or misappropriated RSI's Confidential Trade Secrets.

60.     Because of Defendants' actions, Plaintiff has suffered harm, and now seeks to recover its actual, compensatory, and consequential monetary damages in an amount to be determined by the trier of fact, for which Defendants are jointly and severally liable.

61.     Because Defendants' misappropriation of Plaintiff's Confidential Trade Secrets has been done willfully, maliciously, fraudulently, and with gross negligence, Plaintiff also seeks exemplary or punitive damages in an amount to be determined by the trier of fact, for which Defendants are jointly and severally liable.

**Count Four – MISAPPROPRIATION OF RSI'S CONFIDENTIAL TRADE SECRETS (All Defendants)**

62.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

63.     Defendants violated the Texas Uniform Trade Secrets Act and common law by, among other things, misappropriating RSI's Confidential Trade Secrets.

64.     In particular, RSI's Confidential Trade Secrets give RSI an opportunity to obtain a competitive advantage over its competitors who do not know or use them.

65.     RSI's Confidential Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

66.     RSI has continued to use its Confidential Trade Secrets in its business for approximately 16 years.  Except for Defendants' acquisition by improper means, competitors such as Defendants would not be privy to RSI's Confidential Trade Secrets.

67.     Defendants' use of RSI's Confidential Trade Secrets to compete against RSI threatens to cause irreparable harm if it is not stopped.

68.     RSI has taken reasonable efforts to maintain the confidentiality and secrecy of its Confidential Trade Secrets through, among other things, requiring employees to sign employee handbooks agreeing to maintain confidentiality, limiting access to customer lists and engineering plans, and not advertising the specific layout or design of its mobilized weight carts.

69.     Swedlund and Sandifer owed a duty to RSI to maintain the confidentiality of RSI's Confidential Trade Secrets, and to refrain from taking the Confidential Trade Secrets for their own use to the direct detriment of RSI and for the benefit of Defendants.

70.     RSI did not expressly or impliedly consent to Defendants taking or using its Confidential Trade Secrets.

71.     Swedlund and Sandifer have obtained an unfair advantage by procuring RSI's Confidential Trade Secrets through a calculated program of misappropriation and the breach of known obligations to their former employer, RSI.

72.     As a direct and proximate result of Defendants' misappropriation of RSI's Confidential Trade Secrets, Defendants have damaged RSI and have been unjustly enriched in an amount that exceeds the minimum jurisdictional limits of this Court, for which Defendants are jointly and severally liable.

73.     Additionally, Defendants' misappropriation of RSI's Confidential Trade Secrets was willful and malicious, and in conscious disregard of RSI's rights.  Consequently, RSI is entitled to an award of punitive damages sufficient to punish Defendants and serve as a deterrent to such deceptive and unlawful conduct, for which Defendants are jointly and severally liable.

74.     Further, RSI is also entitled to preliminary and permanent injunctive relief to protect it against Defendants' further use, disclosure, and/or transfer of its Confidential Trade Secrets.

## Count Five – COMMON LAW UNFAIR COMPETITION
## (All Defendants)

75.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

76.     Defendants' acts constitute unfair competition under the common law of Texas.

77.     RSI has built up valuable goodwill in the "Rail Scale" trade name, and the distinctive appearance of genuine Rail Scale services, thereby giving the Rail Scale name a secondary meaning.

78.     For the harm and damage that has occurred and will occur as the result of Defendants' unfair competition, Plaintiff has no adequate remedy at law because RSI's Confidential Trade Secrets are unique, and a suit for damages cannot replace use and ownership of those Confidential Trade Secrets.

79.     Defendants' acts of unfair competition have been malicious and calculated to injure RSI—likely for retribution related to RSI's termination of Swedlund.

80.     The willful, wanton, and malicious nature of Defendants' conduct entitles RSI to an award of its reasonable attorneys' fees and punitive damages against Defendants.

81.     Defendants' acts of unfair competition, including without limitation contacting RSI's customers, utilizing RSI's customer lists, and misappropriating RSI's confidential information, are irreparably injuring RSI's goodwill and eroding RSI's share of the railroad scale certification market, and unless enjoined by this Court, will continue to do so.

82.     Under the common law of the State of Texas, RSI is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts of unfair competition.

## Count Six – TRADEMARK AND TRADE NAME INFRINGEMENT
## (All Defendants)

83.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

84.     Plaintiff further brings this action pursuant to Section 32, 15 U.S.C. § 1114(1)(a) and Section 43(a), 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act, based on Defendants' various acts described herein, including advertising and displaying Defendants' confusingly similar and deceptively misleading trade name, "Railscale."

85.     RSI has developed a protectable trademark right in a federal law, state law, and common law. The term "railscale" or "Rail Scale" is not a term used to identify railroad scales

but is the formal name that Rail Scale, Inc. has used since 1999. RSI has used the mark in the 48 contiguous United States and has filed an application for federal registration of its mark.

86.     Defendants wrongfully and knowingly use the exact same mark ("Rail Scale" or "Railscale") as RSI's protected mark in commerce, which causes confusion as to the source, sponsorship, and/or affiliation of railroad scale certification products and services offered by RSI.

87.     Defendant Balanced Railscale Certification, LLC, and agents, are presently using RSI's mark, particularly on their website and Facebook pages, to sell similar railroad scale certification products and services.

88.     RSI has expended substantial amounts of money, time, and effort in advertising, popularizing, and promoting its "Rail Scale" or "Railscale" trademark so that the public has come to associate the "Rail Scale" or "Railscale" name and mark with RSI's products and services.

89.     Defendants' use of RSI's mark in commerce creates a likelihood of confusion, mistake and/or deception with the consuming public.  The confusion or use of the term ("Rail Scale" or "Railscale") used by the Defendants could cause consumers to believe that Defendants' products and services are identical or equivalent to that of RSI, or that the Defendants are somehow associated, affiliated, connected, approved, authorized or sponsored by RSI, when in fact they are not.

90.     As a direct and proximate result of Defendants' misuse of the mark "Rail Scale" or "Railscale," Plaintiff has suffered, and will continue to suffer, irreparable harm.

**Count Seven – INJUNCTIVE RELIEF**
**(All Defendants)**

91.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

92.     Plaintiff will suffer imminent and irreparable harm unless a preliminary injunction, and then permanent injunction, are issued for the purposes of preserving RSI's Confidential Trade Secrets and stopping Defendants from unfairly competing with RSI.

93.     An injunction is necessary in order to eliminate commercial advantage that would be derived from Defendants' misappropriation.

94.     An injunction is also needed because both RSI and BRC use the term "Rail Scale" or "Railscale" in their title, which makes it difficult to differentiate. BRC's use of the mark risks diluting RSI's mark.

95.     Defendants have already used RSI's Confidential Trade Secrets in pursuing business relationships with RSI's customers and business partners. Thus, it is evident that, in the absence of the entry of injunctive relief, Defendants will proceed with their unlawful plan.

96.     Defendants have registered the name "Railscale," have stolen RSI's Confidential Trade Secrets, have advertised identical services which improperly incorporate RSI's Confidential Trade Secrets in the states where RSI operates, and posted pictures online boasting methods of railroad scale certification identical to RSI, and which improperly incorporate RSI's Confidential Trade Secrets. Unless these actions are enjoined, RSI's business will suffer irreparable harm.

97.     As established above, Plaintiff has more than a reasonable likelihood of prevailing on its claims for breach of fiduciary duties, conversion, theft, misappropriation of trade secrets, unfair competition, and trademark and trade name infringement. Upon information and belief, Defendants have taken RSI's Confidential Trade Secrets, solicited RSI customers using those

Confidential Trade Secrets, and unfairly competed with RSI using RSI's Confidential Trade Secrets.

98.     And injunction is necessary to preserve the status quo.

99.     Plaintiff has no adequate remedy at law for Defendants' unfair competition and ongoing misappropriation of its Confidential Trade Secrets. Plaintiff will suffer irreparable harm if a preliminary injunction is not granted. The property at issue is unique. The conduct of Defendants is threatening to cause irreparable harm to Plaintiff's rights in such property and these Defendants will so cause irreparable harm unless this Court enjoins such conduct.

100.     Pursuant to Federal Rule of Civil Procedure 65, upon notice and a hearing, RSI seeks the entry of a preliminary injunction against Defendants and all persons acting in concert with Defendants, prohibiting or enjoining them from maintaining and/or using any of RSI's Confidential Trade Secrets including, without limitation, performing any railroad scale certifications, utilizing mobile-based weight carts, disclosing any of RSI's Confidential Trade Secrets to any third party, and/or soliciting RSI's customers based on RSI's Confidential Trade Secrets.

101.     RSI further seeks the entry of a temporary injunction against Defendants from using the name or mark "Rail Scale" and/or "Railscale" in any way.

102.     Upon trial of this cause, Plaintiff requests a permanent injunction enjoining the same.

103.     RSI respectfully requests that (i) its request for preliminary injunctive relief be set for hearing; (ii) that Defendants be notified of the date, time, and place of the hearing, and (iii) upon such hearing, that the Court issue a preliminary injunction against Defendants, their

affiliates, agents, servants, and employees, and all persons or entities acting in concert with Defendants, enjoining them as described above.

104.    Upon final trial, RSI seeks a permanent injunction against Defendants, their agents, representatives, employees, and all persons or entities acting in concert with them.

## VI.
## JURY DEMAND

105.    Plaintiff requests that a jury be convened to try the factual issues in this case.

## VII.
## REQUEST FOR RELIEF

106.    WHEREFORE, Plaintiff respectfully requests that the Court issue citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

    a.  After notice and hearing, a preliminary injunction be issued enjoining and restraining Defendants their agents, employees, affiliates, and representatives from maintaining and/or using any of RSI's Confidential Trade Secrets including, without limitation, performing any railroad scale certifications, utilizing mobile-based weight carts, disclosing any of RSI's Confidential Trade Secrets to any third party, soliciting RSI's customers based on RSI's Confidential Trade Secrets, and using the name or mark "Rail Scale" and/or "Railscale" in any way;

    b.  Following such hearing, the Court issue an order compelling Defendants to turn over to Plaintiff, through Plaintiffs undersigned counsel, any and all property belonging to Plaintiff, including RSI's Confidential Trade Secrets mentioned above;

    c.  Enter judgment against Defendants as requested herein, jointly and severally, for Plaintiff's actual, compensatory, consequential, and punitive damages;

d.  Award Plaintiff damages in the form of disgorgement of the ill-gotten gains that Defendants earned or otherwise obtained through the misappropriation of RSI's Confidential Trade Secrets;

e.  Award Plaintiff its reasonable attorneys' fees and costs of court;

f.  Grant Plaintiff a permanent injunction enjoining and restraining Defendants their agents, employees, affiliates, and representatives from maintaining and/or using any of RSI's Confidential Trade Secrets including, without limitation, performing any railroad scale certifications, utilizing mobile-based weight carts, disclosing any of RSI's Confidential Trade Secrets to any third party, soliciting RSI's customers based on RSI's Confidential Trade Secrets, and using the name or mark "Rail Scale" and/or "Railscale" in any way;

g.  Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rates; and

h.  Grant Plaintiff such additional relief, at law and in equity, to which Plaintiff may be justly entitled.

Dated: December 30, 2015

Respectfully submitted,

By:  /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone:  (903) 230-9090
Facsimile:  (903) 230-9661

Bryan J. Wick
Texas Bar No. 24003169
bryan.wick@wickphillips.com
L. David Anderson
Texas Bar No. 00796126
david.anderson@wickphillips.com
Rusty J. O'Kane
State Bar No. 24088149
rusty.okane@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile:  (214) 692-6255

**ATTORNEYS FOR PLAINTIFF
RAIL SCALE, INC.**